IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BOKF, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-03025-MDH |
| | ) | |
| BCP LAND COMPANY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff's Motion for In Camera Review of Documents Withheld by Defendants under Claims of Privilege (Doc. 247). Plaintiff requests *in camera* review of twenty-six e-mail communications withheld by the BCP Land Company Defendants under attorney client privilege on grounds that "[t]here is sufficient evidence to show that these communications are not privileged and/or fall within the crime-fraud exception[.]" Upon review, the Court hereby **GRANTS** Plaintiff's motion for *in camera* inspection.

### I.  BACKGROUND

At the core of this lawsuit is a dispute concerning whether the releases (or non-releases) of Development Period Reserve Fund (DPRF) funds to Redwine following the sales of certain parcels of Special Assessment Property were appropriate under the terms of the Trust Indenture. *See* Am. Compl. Counts I-II; Am. Countercl. Counts I-III. Further at issue in the case are Defendants' actions surrounding the sales of those parcels of property; specifically, whether Defendants fraudulently and intentionally misrepresented certain facts and/or engaged in a scheme to defraud Plaintiff in order to obtain the release of DPRF funds. *See* Am. Compl. Counts III-IV.

Plaintiff's current motion argues that certain documents withheld by the BCP Land Company Defendants on the basis of attorney-client privilege should be reviewed *in camera* and ultimately produced to Plaintiff because the communications are not privileged and/or fall within the crime-fraud exception to attorney-client privilege. Plaintiff argues five of the e-mail communications cited on the privilege log are not subject to attorney-client privilege because no attorney is copied on those e-mails. Plaintiff further argues all twenty-six e-mail communications highlighted on the privilege log, including the five e-mails referenced above, should be produced because those communications lost any privilege under the crime-fraud exception. To support its argument that the crime-fraud exception applies to the twenty-six communications at issue, Plaintiff cited an April 2010 e-mail wherein Defendants allegedly "started creating a fraudulent plan" and compared the subsequent dates of the alleged fraudulent conduct "implement[ing] the plan" with the dates and subject matter of the twenty-six e-mail communications sought to be produced. Plaintiff concludes that, for each of the communications, "[t]he legal advice was sought during and in furtherance of the frauds."

The BCP Land Company Defendants oppose *in camera* review arguing Plaintiff failed to "make a threshold showing, for each document, separately" that there is "a factual basis adequate to support a good faith belief by a reasonable person that the BCP Land Defendants were engaged in intentional fraud and that they communicated with their attorney, Jim Tilden, in furtherance of that fraud." Defendants specifically argue: (1) Plaintiff has no viable claim for fraud because the release of the DPRF funds was governed by the Trust Indenture and any departure from those terms constitutes an action for declaratory relief or breach of contract rather than fraud; (2) the allegations of fraud cited in Plaintiff's motion do not appear in Plaintiff's Amended Complaint and do not relate to the alleged misrepresentations cited in the Amended

Complaint – i.e. Lopez's five e-mails to the Trustee relating to the sale of the properties in 2012; and (3) for various reasons, Plaintiff failed to meet its threshold burden to show the crime-fraud exception applies to any or all of the communications at issue.

## II.  STANDARD

The Supreme Court has described the rationale behind the crime-fraud exception to attorney-client privilege as follows:

> The attorney-client privilege is not without its costs. Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceases to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.* It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy" between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.

*United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (internal citations and quotation marks omitted).

The Court must engage in a three step process in order to determine whether to compel the production of privileged documents under the crime-fraud exception.  At the first step, the movant must present "a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *Zolin*, 491 U.S. at 572.   The reviewing court will "determine, separately for each document, whether [movant has] made the threshold showing required in *Zolin* – 'a factual basis adequate to support a good faith belief by a reasonable person' that the [opposing party] was engaged in intentional fraud and communicated with counsel in furtherance of the fraud."   *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642

(8th Cir. 2001). The fraud at issue, about which the opposing party has allegedly conferred with counsel, must require proof of fraudulent intent as opposed to mere negligent intent or inadvertence. *Id.* at 643. Moreover, whether the opposing party communicated with counsel in furtherance of the fraud concerns client's, rather than the attorney's, mindset. *Id.* at 642-43. The threshold showing at the first step is "a lesser evidentiary showing . . . than is required ultimately to overcome the privilege" and "need not be a stringent one." 491 U.S. at 572.

At the second step, after the court finds the movant has satisfied the threshold showing, the court will exercise its sound discretion to determine whether to engage in *in camera* review based on the facts and circumstances of the particular case. *Zolin*, 491 U.S. at 572. In exercising its discretion, the court will consider factors such as the volume of materials the movant has asked the court to review, the relative importance to the case of the allegedly privileged information, and the likelihood that evidence produced through in camera review will establish that the crime-fraud exception applies. *Id.*

At the third and final step, assuming the court decides to exercise its discretion to review the documents *in camera*, the court will review the documents and apply the crime-fraud exception if the moving party has "ma[de] a prima facie showing that the legal advice has been obtained in furtherance of an illegal or fraudulent activity." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 982-83 (8th Cir. 2007). Such a prima facie showing requires the movant to show: (1) evidence that, if believed by the trier of fact, would establish the existence of a crime or fraud, and (2) the communications were made in furtherance thereof. *See id.*; *see also Triple Five of Minnesota, Inc. v. Simon*, 213 F.R.D. 324, 327 (D. Minn. 2002) *aff'd*, 2002 WL 1303025 (D. Minn. 2002).

## III. DISCUSSION

The Court has carefully reviewed Plaintiff's and Defendants' arguments concerning the twenty-six e-mail communications at issue and finds Plaintiff has presented a factual basis that is adequate to support a good faith belief by a reasonable person that *in camera* review of the e-mails may reveal evidence to establish that the BCP Land Company Defendants were engaged in intentional fraud and communicated with counsel in furtherance of the fraud.

### A. Applicable Frauds

Plaintiff's Amended Complaint asserts claims for fraudulent misrepresentation (Count IV) and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count III). To prevail on its RICO claim, Plaintiff must show a pattern of racketeering activity, including the commission of at least two predicate acts. The Amended Complaint alleges Defendants engaged in a pattern of racketeering activity through the predicate acts of wire fraud and bank fraud. As more fully outlined in the Court's prior order (Doc. 104), both fraudulent misrepresentation and wire fraud require proof of fraudulent intent.[1] Therefore, Plaintiff must establish the crime-fraud exception on facts related to Defendants' alleged fraudulent misrepresentation and/or wire fraud. *See, e.g., Triple Five of Minnesota*, 213 F.R.D. at 327 (citing RICO predicate offenses as basis for crime fraud exception).

### B. Factual Basis to Support *In Camera* Review

The facts underlying Plaintiff's fraudulent misrepresentation and RICO claims are contained in the Amended Complaint and will not be repeated in full here. In sum, Plaintiff alleges Defendants created a scheme to defraud the Trustee into releasing DPRF funds by transferring/selling portions of the Special Assessment Property to strawmen, by making

---

[1] The Supreme Court has refused to require intent to defraud as an element of bank fraud brought under subsection (2) of 18 U.S.C. § 1344. *Loughrin v. United States*, 134 S. Ct. 2384, 189 L. Ed. 2d 411 (2014).

5

intentionally false representations to the Trustee indicating certain lots had been sold and the DPRF funds should be released, by obtaining release of DPRF funds by means of the false representations, and then by splitting the released funds and refusing to pay special assessments on the "sold" properties. *See* Am. Compl. ¶¶ 125-130, 154-165, 186-190, 202, 205-207. Plaintiff's fraudulent misrepresentation claim cites six allegedly misrepresentations made by Lopez to the Trustee on August 24, 2012, September 13, 2012, November 12, 2012, December 4, 2012, December 27, 2012, and November/December 2013 that state certain lots had been sold and DPRF proceeds should be released to Redwine. Plaintiff's RICO claim alleges the same representations "were made in furtherance of the scheme to defraud the Trustee, to avoid having to pay assessments, and to avoid obligations under the Replenishment Covenant and Replenishment Guarantee"; specifically, Plaintiff alleges Defendants entered into an agreement to use false representations in order to obtain bank property via wire transfers and then perpetrated their scheme by using the misrepresentations cited above in order to transmit DPRF proceeds to Redwine.

Attached to Plaintiff's Amended Complaint is an April 2010 communication from Redwine to Kynion, Jury, and Lopez that discusses financial concerns with the Branson Special Assessment Property and the need/desire to eliminate the DPRF. *See* Am. Compl., Ex. 20. Plaintiff now submits an additional April 2010 e-mail communication from Kynion to Redwine and Jury discussing concerns and considerations moving forward with the Branson Special Assessment Property including a suggestion to shield assets from bondholders and questions about any risks associated with Kynion purchasing a portion of the properties and not paying tax assessments on those properties. *See* Pl's Mot., Ex. 2. Plaintiff also submits a June 2012 communication from Kynion to "John & Jacky" wherein Kynion directs the e-mail recipients to

6

bid on lots 9-12 and 30-35 using purchaser's name Grace Properties Branson, LLC assuming that name was available or Oobneb, LLC otherwise and insisting that "[o]ur name will never show up on any of the documents or communications" and "[t]he auction guy does not need to know who we are or anyone else for that matter" and "make sure nothing of our information shows up." *See* Pl's Mot., Ex. 3.  Plaintiff attached to its Amended Complaint an August 2012 communication between Jury, Redwine, Kynion, and Lopez that outlines the target dates for sales of specific lots of the Special Assessment Property and target dates for submission of requests to release DPRF funds.  *See* Am. Compl., Ex. 21.

The e-mail communications sought to be discovered by Plaintiff are as follows:

| Privilege Log No. | Date | Author | Recipient | Subject |
|---|---|---|---|---|
| 202 | 4/18/2012 | Jury | Redwine, Lopez, Tilden | Potential sale of BCP Land Company property |
| 205 | 7/14/2012 | Jury | Redwine, Lopez | "BCP Land Company analysis and potential Redwine/BCP Land Company litigation with Southwest Trust – Subject reflects work product from litigation and attorney/client communications" |
| 206 | 8/17/2015 | Jury | Redwine, Lopez | "Sales of BCP Land Company property and consequences of said sales; assessments – Subject reflects issues to be discuss with counsel" |
| 207-213, 209.5 | 8/28/2012-8/29/2012 | Jury/Tilden | Tilden or Tilden, Redwine, Lopez/Jury | "Sales of BCP Land Company property and consequences of said sales; assessments" |
| 250-259 | 5/15/2013-5/16/2013 | Tilden/Lopez/Jury | Lopez, Redwine Jury/Tilden, Redwine, Jury/Tilden, Lopez, Redwine | "Sales of BCP Land Company property" |
| 260-262 | 5/17/2013-5/18/2013 | Lopez/Redwine | Jury, Redwine/Lopez, Jury | "Sales of BCP Land Company property – Subject reflects attorney-client privileged communications." |
| 263-264 | 5/22/2013-5/23/2013 | Tilden/Lopez | Lopez/Tilden, Redwine, Jury | "Sales of BCP Land Company property" |

Based on the foregoing information and the timeline outlined in Plaintiff's motion, the Court finds Plaintiff has satisfied the threshold showing required by *Zolin* for each separate document – i.e. a factual basis adequate to support a good faith belief by a reasonable person that

7

the BCP Land Company Defendants were engaged in intentional fraud and communicated with counsel in furtherance of the fraud. As stated by the Supreme Court, the threshold requirement for *in camera* review is not intended to be strict. Here, the April 18, 2012 e-mail allegedly "was sent before BCP Defendants made misrepresentations in 2012 and 2013 but after BCP Defendants devised their fraudulent plan in April 2010, and BCP Defendants have admitted it relates to the topics discussed in Kynion's April 2010 e-mail." The July 14, 2012 e-mail does not copy an attorney and was sent after Kynion secretly bid on certain lots (see his June 2012 e-mail discussed above) but before the purchase agreements on those lots were signed and before the alleged misrepresentation related that sale was made; the e-mails concern both "BCP Land Company analysis" and potential litigation with the Trustee. The August 17, 2012 e-mail does not copy an attorney, was sent one week prior to the first alleged misrepresentation, and concerns subject matter related to the alleged ongoing RICO scheme to defraud. The August 28-29, 2012 e-mails were sent within five days after the first alleged misrepresentation and release of DPRF funds, prior to the subsequent alleged misrepresentations and releases, and it concerns subject matter relating to the alleged ongoing RICO scheme to defraud. Finally, the May 2013 e-mails were made after Kynion failed to pay special assessments on the purchased properties, after Trustee's counsel requested copies of the 2012 purchase contracts and settlement statements but before such documents were forwarded, and reportedly concerns the sales of property at issue in the scheme to defraud. These e-mails may involve communications with an attorney to assist in "covering up" wrongdoing.[2] Moreover, these e-mails were sent prior to the final alleged misrepresentation in late 2013/early 2014.

---

[2] *See In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998) ("The exception does not apply if the assistance is sought only to disclose past wrongdoing . . . but it does apply if the assistance was used to cover up and perpetuate the crime or fraud."); *see also In re Green Grand Jury Proceedings*, 492 F.3d 976, 985 n. 9 (8th Cir. 2007) (distinguishing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643 (8th Cir. 2001)).

Defendants' arguments that there is no legitimate basis for a fraud claim and that the frauds cited in Plaintiff's motion do not relate to the frauds alleged in the Amended Complaint are rejected at this time.[3] The Court finds Plaintiff has presented a factual basis *adequate to support a good faith belief* by a reasonable person that *in camera* review of the materials *may* reveal *evidence* to establish Plaintiff's claim that the crime-fraud exception applies. The Court will address Defendants' arguments concerning the merits of Plaintiff's fraud-based claims through the pending dispositive motions (Docs. 258).

## DECISION

Because Plaintiff has satisfied the threshold finding in *Zolin* and because the Court, exercising its sound discretion, finds *in camera* review appropriate based on the facts and circumstances of the case, Plaintiff's Motion for In Camera Review of Documents Withheld by Defendants under Claims of Privilege (Doc. 247) is hereby **GRANTED**. BCP Land Company Defendants are **ORDERED** to submit the communications withheld pursuant to privilege log numbers 202, 205, 207-213, 209.5, and 250-264 for *in camera* inspection by 5:00 p.m. on October 30, 2015.[4]

**IT IS SO ORDERED.**

Date: October 22, 2015                    */s/ Douglas Harpool*
                                                                                      **DOUGLAS HARPOOL**
                                                                                      **UNITED STATES DISTRICT JUDGE**

---

[3] The Court agrees that "Fraud #3" cited in Plaintiff's motion does not appear in the Amended Complaint. Plaintiff argues Fraud #3 is an extension of the scheme to defraud cited in the Amended Complaint. The Court need not address that issue because it finds the frauds explicitly alleged in the Amended Complaint accompanied by the exhibits submitted to the Court form a valid basis for *in camera* review.

[4] Defendants shall e-mail the communications to Chambers at Breanna_Hance@mow.uscourts.gov or, alternatively, mail hard copies of the communications to Chambers at 222 John Q. Hammons Parkway, Springfield, MO 65806.