## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOKF, N.A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:14-cv-03025-MDH** |
| | ) | |
| **BCP LAND COMPANY, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court commenced a jury trial in this matter on April 4, 2016. At the close of Plaintiff's evidence, the Court granted Defendants' motion for judgment as a matter of law as to Plaintiff's RICO claims. The remainder of the case was submitted to the jury and the jury returned answers to special interrogatories and a verdict on April 14, 2016. Based on the Court's rulings and the jury's findings, the Court hereby enters the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. Background

1.      The Branson Commerce Park Community Improvement District (the "District") is a political subdivision of the State of Missouri within the City of Branson, Missouri that was created on or about September 11, 2006 pursuant to the Missouri Community Improvement District Act, sections 67.1401 to 67.1571 of the Revised Statutes of Missouri.

2.      The District is comprised of approximately 345 acres of land in Branson, Missouri. At the time the District was created, all of the property in the District was owned by

Branson Commerce Park, LLC, which intended to develop the property for commercial and residential purposes (the "Special Assessment Property").

3. To finance the development of the Special Assessment Property, on or about June 27, 2007, the District authorized issuance of $13,590,000 Branson Commerce Park Community Improvement District Special Assessment Bonds, Series 2007A, and $3,150,000 Branson Commerce Park Community Improvement District Subordinate Special Assessment Revenue Bonds, Series 2007B (collectively, the "Bonds").

4. The terms of the Bonds and the District's obligations to the bondholders are set forth in the Trust Indenture. In general, the District pays interest and principal due under the Bonds to the bondholders by imposing special assessments against the owners of the Special Assessment Property.

5. Plaintiff BOKF is the Trustee under the Trust Indenture made and entered into on or about July 1, 2007 with the District. The original trustee under the Trust Indenture was Southwest Trust Company, N.A. BOKF is the successor of Southwest Trust Company, N.A., and it became the Trustee under the Trust Indenture.

6. Section 101 of the Trust Indenture defines "Developer" to mean "Branson Commerce Park, L.L.C. and affiliates or successors thereof." Defendant BCP Land Company, LLC is a successor of Branson Commerce Park, LLC. BCP Land is considered the "Developer" under the Trust Indenture.

**B. The Development Period Reserve Fund ("DPRF")**

7. Sections 401 and 406 of the Trust Indenture created and established a fund called the Development Period Reserve Fund (the "DPRF").

8.     The original developer funded the DPRF by depositing $1,424,768.75 with the Trustee.

9.     Section 406(a) of the Trust Indenture provides that the Trustee must use the monies in the DPRF to pay defaulted special assessments on Special Assessment Property owned by the Developer ("Developer Owned Special Assessment Property") to the County Collector. The County Collector would then pay those monies into a separate fund to pay the interest and principal to the bondholders.

10.     In connection with the issuance of the Bonds under the Trust Indenture, the District entered into a Covenant to Replenish Development Period Reserve Fund and Guaranty Thereof, dated July 12, 2007, with Branson Commerce Park, LLC and the original members of Branson Commerce Park, LLC (the "Replenishment Covenant"). The Replenishment Covenant requires Branson Commerce Park, LLC, and its successors and assigns, to replenish the DPRF at any time the Trustee withdraws funds from the DPRF pursuant to section 406(a) of the Trust Indenture. The individual parties to the Replenishment Covenant (collectively the "Guarantors") agreed therein to guaranty the replenishment obligations of Branson Commerce Park, LLC and its successors and assigns (the "Replenishment Guaranty"). One of the individual parties to the Replenishment Covenant was Defendant Jack Redwine.

11.     Section 11 of the Replenishment Covenant provides that it shall be binding on Branson Commerce Park, LLC, and its successors and assigns.

12.     Section 406(c) of the Trust Indenture provides:

The amount on deposit in the Development Period Reserve Fund will be reduced on and after June 2 of each year if and to the extent that (a) the Developer provides the Trustee with documents evidencing that the Developer has transferred a portion of the Developer Owned Special Assessment Property to third parties not controlling, controlled by or under common control with the Developer, and (b) the District gives the Trustee written notice that all Special

3

Assessments, penalties and/or interest on said parcel, if any, currently due and payable on such property have been paid through the date of the proposed reduction. Upon satisfaction of such requirements, the Trustee shall release to the Developer a pro-rata amount of the Development Period Reserve Fund. That amount shall be determined by dividing the square footage of the Developer Owned Special Assessment Property transferred by the Developer by the aggregate square footage of Developer Owned Special Assessment Property immediately prior to such transfer and multiplying the resulting ratio by the amount then on deposit in the Development Period Reserve Fund.

13. Branson Commerce Park, LLC assigned its right to receive monies released from the DPRF pursuant to section 406(c) of the Trust Indenture to Defendant Jack Redwine.

14. In an Order dated March 9, 2016 (Doc. 299), the Court adopted definitions for the following terms as used in the Trust Indenture. No definitions for these terms were contained in the Trust Indenture itself.

   a. The Court defined "successor" to mean one who takes the place of another.

   b. The Court defined "affiliate" to mean a corporation or entity that is related to another corporation or entity by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.

   c. The Court defined "control" to mean the direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to direct, manage, or oversee. This power may come from something other than ownership or contract.

15. At the close of Plaintiff's evidence, the Court found as a matter of law that the phrase "date of the proposed reduction" as used in section 406(c) refers to the date responsibility for the payment of the assessment transferred from the Developer to the new owner of the lot subject to the assessment. The Court rejects Plaintiff's position that the phrase refers to the date information concerning the sale was communicated to the Trustee. Plaintiff's position would result in the date of communication from the District to the Trustee controlling the return of the DPRF funds to the Developer rather than the date of transfer, which could penalize the

Developer for delays in communication by the District and for non-payment of assessments actually owed by the new owner.

### C. The 2012 Sales

16.     In 2012, BCP Land sold and transferred Developer Owned Special Assessment Property ("DOSAP") parcels 9C, 10C, 11C, and 12C to Grace Properties Branson, LLC. Following the transfers of these parcels, BCP Land requested, and pursuant to that request received, $170,794.65 from the Trustee from the DPRF.

17.     In 2012, BCP Land sold and transferred DOSAP parcels 30C, 31C, 32C, 33C, 34C and 35C to Country Meadows Estates, LLC, which then assigned its rights in those parcels to SJ Legacy, LLC.  Following the transfers of these parcels, BCP Land requested, and pursuant to that request received, $239,517.00 from the Trustee from the DPRF.

18.     In 2012, BCP Land sold and transferred DOSAP parcels 13C, 14C, 15C, 16C, 17C, 18C and 19C to Parkway Enterprises, LLC.  Following the transfers of these parcels, BCP Land requested, and pursuant to that request received, $303,772.80 from the Trustee from the DPRF.

19.     In 2012, BCP Land sold and transferred DOSAP parcels 27C, 28C and29C to JH Branson, LLC.  Following the transfers of these parcels, BCP Land requested, and pursuant to that request received, $67,678.35 from the Trustee from the DPRF.

20.     In 2012, BCP Land sold and transferred DOSAP parcels 36-37MF to SJ Legacy LLC and DOSAP parcel 40MF to Grace Properties Branson, LLC.  Following the transfers of these parcels, BCP Land requested, and pursuant to that request received, $180,883.81 from the Trustee from the DPRF.

21.     On five separate occasions in 2012, Defendant Philip Lopez requested that BOKF release monies held in the DPRF to Jack Redwine pursuant to section 406(c) of the Trust Indenture. Consistent with the requests, BOKF released a total sum of $962,646.61 from the DPRF based on the transfers to the 2012 Buyers.

22.     Funds from the DPRF were consistently paid to Redwine upon sales of land in 2012 within days after the request from Lopez and without requiring the District to produce all of the information Plaintiff claims the notice under 406(c) required.

23.     The 2012 Buyers have not paid special assessments since the properties were transferred to them; the special assessments due December 31, 2012, December 31, 2013, December 31, 2014, and December 31, 2015 are unpaid and owing.

24.     Defendant Jack Kynion is the owner of Grace Properties Branson, LLC, Country Meadow Estates, LLC, JH Branson, LLC, SJ Legacy, LLC, and Parkway Enterprises, LLC, all of the entities which purchased lots from BCP Land in 2012. Kynion has served as a financial planner or financial advisor for BCP Land members Jack Redwine and Tim Jury for the past fifteen years and he has provided advice to Redwine regarding Redwine's investment in the Branson Commerce Park project since approximately 2009. Kynion was designated by Redwine to serve as a non-testifying expert in prior litigation surrounding the Branson Commerce Park project. Kynion was also involved in various efforts to market and sell the lots owned by BCP Land both before and after the 2012 purchases, and he approached a representative of the bondholders on behalf of BCP Land to offer to purchase the Bonds for a reduced price. In July of 2012, Redwine referred to Kynion as a member of "The Team" and described him as the "[f]inancial planner and counselor helping the three of us navigate the [Branson] Commerce Park financial challenges." Kynion has a street named after him in Branson Commerce Park.

25.     Kynion testified that his LLC's purchased the lots in 2012 with no intention of paying special assessments owed on the lots unless and until the LLC's were able to re-sell the properties.

### D.  The 2013 Sales

26.     In 2013, BCP Land sold and transferred DOSAP parcel 38MF to Appliance Center of the Ozarks, LLC.  Following the transfer of parcel 38MF, BCP Land requested $120,803.00 from the Trustee from the DPRF.  The Trustee refused this request.

27.     In 2013, BCP Land sold and transferred DOSAP parcel 39MF to Business Advisors, LC.  Following the transfer of parcel 39MF, BCP Land requested $125,903 from the Trustee from the DPRF.  The Trustee refused this request.

28.     At the time of each of these sales, all special assessments due and owing on the respective parcels had been paid.

29.     The 2013 Buyers have not paid special assessments since the properties were transferred to them; the special assessments due December 31, 2013, December 31, 2014, and December 31, 2015 are unpaid and owing.

30.     Charles Engram is the owner, along with his wife, of Appliance Center of the Ozarks, LLC, which purchased Lot 38MF from BCP Land in 2013.  In the fall of 2013, prior to the purchase of Lot 38MF, Charles Engram was retained by BCP Land as a consultant to "create energy and excitement" about Branson Commerce Park and to sell lots owned by BCP Land.  At that point, BCP Land paid Engram $1,000 per month for his services plus a commission for sales that he generated.  Engram held himself out and continues to hold himself out to the public as the "Senior Director of Business Development" of Branson Commerce Park.

31.     John Gilliford and Keith Hanson are the owners of Business Advisors, LC, which purchased Lot 39MF from BCP Land in 2013.  John Gilliford served as legal counsel for Defendant Jack Kynion prior to 2012 and in 2012.  Gilliford assisted Kynion with organizing Grace Properties Branson, LLC and with preparing bid forms for the properties purchased by Grace Properties Branson, LLC from BCP Land.  Keith Hanson is a financial planner who shares office space with Defendant Jack Kynion and who has provided joint financial services with Kynion in the past.  Hanson describes Kynion as a personal friend and mentor.  Kynion informed Hanson about the auction at which Business Advisors, LC purchased lot from BCP Land.

### E.  Jury Findings

32.     With respect to each of the four entities that purchased land from BCP Land in 2012, the jury answered special interrogatories concerning whether the buyer was a "successor" of BCP Land, an "affiliate" of BCP land, or a "third party controlling, controlled by, or under common control with" BCP Land.

33.     The jury answered that Grace Properties Branson, LLC was not a successor of BCP Land, an affiliate of BCP Land, or a third party controlling, controlled by, or under common control with BCP Land.

34.     The jury answered that SJ Legacy, LLC was not a successor of BCP Land, an affiliate of BCP Land, or a third party controlling, controlled by, or under common control with BCP Land.

35.     The jury answered that Parkway Enterprises, LLC was not a successor of BCP Land, an affiliate of BCP Land, or a third party controlling, controlled by, or under common control with BCP Land.

36.     The jury answered that JH Branson, LLC was not a successor of BCP Land, an affiliate of BCP Land, or a third party controlling, controlled by, or under common control with BCP Land.

37.     With respect to each of the two entities that purchased land from BCP Land in 2013, the jury answered special interrogatories concerning whether the buyer was a "successor" of BCP Land, an "affiliate" of BCP land, or a "third party controlling, controlled by, or under common control with" BCP Land.

38.     The jury answered that Appliance Center of the Ozarks, LLC was not a successor of BCP Land or an affiliate of BCP Land.

39.     The jury answered that Appliance Center of the Ozarks, LLC was a third party controlling, controlled by, or under common control with BCP Land.

40.     The jury answered that Business Advisors, LC was not a successor of BCP Land, an affiliate of BCP Land, or a third party controlling, controlled by, or under common control with BCP Land.

41.     The jury's verdict held in favor of BCP Land on BOKF's claim for fraudulent nondisclosure (Jury Instruction No. 21).

## II.  CONCLUSIONS OF LAW

### A. Plaintiff's Request for Declaratory Relief (Count I of First Amended Complaint) and Redwine's Request for Declaratory Relief (Count I of Counterclaim)

1.     Based on the jury's answers to the special interrogatories contained in Jury Instruction No. 19, the Court finds in favor of BCP Land, Redwine, and the 2012 Buyers (Grace Properties Branson, LLC, Parkway Enterprises, LLC, JH Branson, LLC, and SJ Legacy, LLC) on that portion of BOKF's request for declaratory relief relating to the 2012 sales of DOSAP to the various 2012 Buyers (Grace Properties Branson, LLC, Parkway Enterprises, LLC, JH

Branson, LLC and SJ Legacy, LLC). The 2012 Buyers are not affiliates or successors of BCP Land, and further, the 2012 Buyers are third parties not controlling, controlled by, or under common control with BCP Land. The requirements of Section 406(c) for releasing a portion of the DPRF were satisfied by the transfers of Special Assessment Property to the 2012 Buyers. Therefore, the Court concludes that the Trustee's release of $962,646.61 from the DPRF to Redwine on account of these sales in 2012 was appropriate under Section 406(c). Judgment will be entered against Plaintiff and in favor of Redwine, BCP Land, and the 2012 Buyers on this portion of Plaintiff's request for declaratory relief.

2. Based on the jury's answers to the special interrogatories contained in Jury Instruction No. 25, the Court finds in favor of BCP Land, Redwine, and Business Advisors, LC on that portion of BOKF's request for declaratory relief relating to the 2013 sale and transfer of Lot 39MF to Business Advisors, LC. Business Advisors, LC is not an affiliate or successor of BCP Land, and further, it is a third party not controlling, controlled by, or under common control with BCP Land. The requirements of section 406(c) of the Trust Indenture for releasing a portion of the DPRF were satisfied by the transfers of Special Assessment property to Business Advisors, LC. Therefore, the Court concludes the Trustee must release $125,903 from the DPRF to Redwine because the sale of Lot 39MF satisfies the requirements of Section 406(c). Judgment will be entered against Plaintiff and in favor of Redwine, BCP Land, and Business Advisors on this portion of Plaintiff's request for declaratory relief. Additionally, judgment will be entered in Redwine's favor and against the Trustee on this portion of Redwine's request for declaratory relief.

3. Based on the jury's answers to the special interrogatories contained in Jury Instruction No. 25, the Court finds in favor of Plaintiff on that portion of Plaintiff's request for

declaratory relief relating to the 2013 sale and transfer of Lot 38MF to Appliance Center of the Ozarks, LLC. That entity is a third party controlling, controlled by, or under common control with BCP Land. Therefore, with respect to that sale, the Court concludes the requirements of section 406(c) have not been met and Lot 38 MF is still Developer Owned Special Assessment Property as that term is defined in the Trust Indenture. Accordingly, the Trustee is not required to release any DPRF funds for that sale. Pursuant to section 406(a) of the Trust Indenture, the Trustee may pay all special assessments owned on Lot 38MF with monies held in the DPRF. In accordance with the Replenishment Covenant, BCP Land will be required to replenish the DPRF for sums withdrawn by BOKF to pay for the defaulted special assessments on Lot 38MF and, to the extent BCP Land fails to replenish the DPRF, the individual parties to the Replenishment Guaranty will be required to satisfy those replenishment obligations. In light of the foregoing, judgment will be entered in favor of Plaintiff and against Redwine, BCP Land, and Appliance Center of the Ozarks, LLC on this portion of Plaintiff's request for declaratory relief. Judgment will be entered against Redwine and in favor of the Trustee on this portion of Redwine's request for declaratory relief.

4.      Based on the jury's answers to the special interrogatories contained in Jury Instruction No. 25, the Court finds that as long as Appliance Center of the Ozarks, LLC continues to own Lot 38MF, the failure of Appliance Center of the Ozarks, LLC to pay the special assessments on Lot 38MF will permit BOKF to pay those special assessments using monies in the DPRF and then seek replenishment from BCP Land, Appliance Center of the Ozarks, LLC, and the Guarantors pursuant to section 406 of the Trust Indenture, the Replenishment Covenant, and the Replenishment Guaranty.

**B. Plaintiff's Claim for Violations of 18 U.S.C. §1962 (Civil RICO) (Count III of First Amended Complaint).**

5. The Court granted Defendants' Motion for Judgment as a Matter of Law as to BOKF's claim for violations of 18 U.S.C. §1962 (Civil RICO) against Defendants BCP Land Company, Jack Redwine, Tim Jury, Phil Lopez, Jury Industries, LLC, Zepol Industries, LLC, Jack Kynion II, Grace Properties Branson, LLC, SJ Legacy, LLC, Parkway Enterprises, LLC, JH Branson, LLC, Business Advisors, LC, and Appliance Center of the Ozarks, LLC. Judgment is entered against BOKF and in favor of Defendants on said claim.

**C. Plaintiff's Claim for Fraudulent Nondisclosure (Count IV of First Amended Complaint)**

6. The Court adopts the jury's verdict and enters judgment against Plaintiff and in favor of BCP Land on Plaintiff's claim for fraudulent nondisclosure.


**IT IS SO ORDERED.**

Date:  May 25, 2016                        _____*/s/ Douglas Harpool*_____
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**